for a breach of contract, and the other for corporate moneys wrongfully appropriated by Dodge to his own use. The former belongs to the plaintiff in his individual right, but the latter belongs to the corporation, and may only be maintained by the corporation or by a stockholder in its behalf. It is clear that such causes of action cannot be united in one complaint.

Without, therefore, considering the other grounds of demurrer to this inartificially drawn complaint, we are of opinion that the appeal from the order should be dismissed, and the interlocutory judgment should be affirmed, with costs, with leave to plaintiffs to amend complaint upon payment of costs in this court and in the court below. All concur.

---

(100 App. Div. 295)

MORRIS v. INTERURBAN ST. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. January 6, 1905.)

1. DEFECTIVE STREETS—NEGLIGENCE OF CITY.

Where a subway was being excavated in a street under legislative authority by a corporation over which the city had no control, the city was not negligent because it did not keep a gang of men at work repairing the street as it was interfered with from day to day by the contractors making the excavation.

2. SAME—CONTRIBUTORY NEGLIGENCE.

The driver of an automobile, who was killed by being thrown into an excavation in the street by an accident which resulted from one of the front wheels running into a depression while he was trying to cross a street car track at a high rate of speed in front of a car going in the same direction, was guilty of contributory negligence.

Appeal from Trial Term, New York County.

Action by Dora E. Morris, as administratrix of the estate of Edward V. Morris, deceased, against the Interurban Street Railway Company and the city of New York, to recover for the death of decedent. From a judgment for plaintiff, and an order denying a new trial, defendant city of New York appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

Terence Farley, for appellant.
Melville J. France, for respondent.

INGRAHAM, J. The plaintiff's intestate was killed by falling into an excavation caused by the building of an underground railroad on Seventh avenue, between Forty-Third and Forty-Fourth streets, in the city of New York. The plaintiff brought this action against the Interurban Railroad Company, who maintained and operated a street railroad in Seventh avenue in this locality, and against the city of New York, alleging that the defendants had negligently and carelessly permitted and suffered the said Seventh avenue, between Forty-Third and Forty-Fourth streets, to be improperly and dangerously constructed, and to become and remain worn and hollow and out of repair, and in a dangerous and unsafe condition, in and about the tracks of the said railroad, and so that

there existed at that place between the rails of said tracks a large and dangerous hole, which was at or near the junction of a switch track and the north-bound track of the said railway company, of all of which the defendants had due notice. The case was submitted to the jury, who found a verdict against the city and in favor of the Interurban Street Railway Company, and from the judgment entered upon that verdict the city of New York appeals.

The liability of the city of New York is predicated upon its negligence in allowing the existence of the hole between the tracks of the defendant railway company, into which the wheels of the automobile slipped and turned, and the insufficient guard about the excavation of the underground railroad. The question as to the liability of the railroad company is not before us, but, to sustain this verdict, there must be evidence to show that the city was negligent in the performance of its duty in keeping the streets in the city of New York in repair, and that the accident that caused plaintiff's intestate's death was caused by such negligence. There was being constructed at this point, under a contract made with the rapid transit commissioners, an underground railroad, over which neither the city of New York nor the railroad company had any control. The deceased was employed by an automobile company to operate one of its automobiles, and received a salary of $12 per week. A witness who was also an automobile driver testified that at the time of the accident he was sitting upon an automobile in front of a restaurant about 300 feet from where the accident happened; that he saw an automobile start and come along Seventh avenue until it reached a point about 10 or 15 feet from Forty-Third street, and that all at once it took a sudden jerk, and swerved and went over into the excavation; that on Seventh avenue at this time there was no room to go on either side of the tracks, in consequence of this excavation; that one had to travel upon the railroad tracks to go from Forty-Third to Forty-Fourth street; that for at least a month prior to this accident there was a depression in front of the switch of the track of the railroad company from 4 to 6 inches deep; that just below that depression the street was paved with dirt on the top of planks placed over the bed of the street by the underground railroad construction; that this depression along the rail extended about 6 inches from the inside of one rail to the other rail between the two tracks; that the witness saw the automobile swerve in the vicinity of the hole and turn over into the excavation; that the accident happened about 12 o'clock at night. Another witness testified that there were small holes alongside of the tracks, and depressions in the pavements on either side of the rails; that these depressions were about 4 inches deep; that the lights were out, and that it was a dark night, but that one of the defendant's cars was within 15 or 20 feet when the automobile fell into the excavation; and that the light from that car was the only light in this locality. Another witness testified that he left the restaurant with the plaintiff's intestate; that the plaintiff's intestate got upon his automobile and started up Seventh avenue; that the witness started to walk up; that plaintiff's intestate went along on the down-

town track a few feet, and then crossed over to go on the uptown track, and as he got over on the uptown track the witness noticed the automobile went over into the excavation; that there was a switch, and between the switch and the downtown track there was a hole in the road 5 or 6 inches deep and a foot wide; that the street was paved with asphalt on one side; that next to the railing where the automobile went over there was a planking a little over a foot wide, and from the planking to the rail it was about 2 feet further, and it sloped a little; that on the other side it was filled in; that there was no other place to go up Seventh avenue, except on the car tracks; that this hole next to the switch had lasted two weeks before the accident; that he could not testify positively about the depth of the holes, but that they might have been 3 or 4 inches deep. Another witness testified that he was on the north-west corner of Forty-Third street and Broadway; that he saw the automobile leave the restaurant and come up Broadway on the south-bound track; that it swerved over to the north-bound track, and then went into the excavation about the switch somewhere; that the witness was not sure whether the streets were paved, or covered with plank, with some dirt on top of them; that there were holes all around there; that the hole alongside of the switch was about 2½ or 3 or 4 inches deep; that this excavation was right close to the tracks. Another witness testified that he was on the box of a hansom cab at Forty-Fourth street and Broadway; that he saw an automobile hansom and a car directly behind it; saw the automobile give a lurch and go over into the excavation for the subway; that the surface of the streets between the tracks was full of ruts, which varied from 4 to 12 inches—about 3 inches deep: that the rut at the switch was from 4 to 12 inches wide; that the street was full of ruts, and was in the same condition two days before the accident; that the witness was about 250 to 300 feet from where the accident happened; that the asphalt was simply broken away from around the rail and around the switch. The plaintiff then rested, and the city of New York moved to dismiss the complaint as against the city. This motion was denied, and counsel for the city excepted.

On behalf of the defendant, it was proved that at the time of this accident the contractor was making the excavation for the underground railroad underneath the railroad tracks; that the street was held up by a trestle construction of timbers under the tracks; that these timbers had to be shifted around—taken from place to place—to get out the rock or earth; that from the latter part of April up to and including the month of August this street and this railroad track between Forty-Third and Forty-Fourth streets was on a trestle; that along the side of the street there were 2-inch timbers, from 8 to 12 inches broad, which were nailed along the track; that the contractor would break out the concrete and asphalt so as to get at the arches, and get the concrete in the arches below; that for two or three weeks previous to the accident there were sometimes worn places along the rail. An inspector for the underground road testified that at the time of the accident he was

on duty at Seventh avenue between Forty-Third and Forty-Fourth streets; that before he got there the asphalt pavement had been removed, and plank substituted; that it was necessary to dig some of the asphalt out in order to get in the concrete for the underground railroad; that the surface of the road was substantially changed, undergoing repairs, every day; that just where this switch was, the asphalt had not been removed. A police officer on that post testified that in this street, between Forty-Third and Forty-Fourth streets, the workmen were constantly tearing and ripping up the street between the tracks; that they were shoring up the big girders, and blocking up the track from the ground; that they put planking down all along the street; that whatever asphalt there was left was mostly in the center of the track—between the two tracks; that the contractors were daily repairing and shoring up underneath these tracks; that they tore up parts of the pavement around this switch, and then they boarded it up; that there were small depressions, with the contractors constantly making repairs and constructing the temporary roadway.

One of the motormen of the defendant railroad company testified that he was going north on the north-bound track while the plaintiff's intestate was going north on the south-bound track; that the witness stopped his car on the south side of Forty-Third street, and the automobile turned into the north-bound track about 40 or 45 feet ahead of his car, just about at the temporary crossing at Forty-Third street; that he was going at a fast rate of speed, and tried to get ahead of the car upon the north-bound track; that in crossing to the north-bound track his front wheel hit the fence, and the automobile fell into the excavation; that the front wheel broke the fence, "and down the automobile went"; that there was a red lamp on the side of the fence, and a light from the drug store; that it was the turning of the automobile upon the north track that caused it to strike the fence; that the plaintiff's intestate had his hand on the lever of the machine; that, as he turned the machine in crossing to the north-bound track, he struck the fence, and fell into the excavation; and this testimony of the motorman was corroborated by two other witnesses who stood at the temporary crossing and saw the automobile crossing from the south to the north-bound track, and saw the plaintiff's intestate tugging at the lever, and, as he got upon the north-bound track, strike this fence and tumble into the excavation.

At the end of the whole case, counsel for the city of New York made a motion to direct a verdict in favor of the city. That motion was denied, and the defendant excepted.

I think it clear that the finding that this accident was in any way caused by any negligence of the defendant the city of New York is without evidence to support it. On Seventh avenue, between Forty-Third and Forty-Fourth streets, the contractors were excavating for the underground railroad. The evidence is undisputed that the surface of the streets was being constantly changed by the contractors; they substituting planks for the asphalt pavement, and supporting the tracks of the railroad to make the neces-

sary excavations; the whole street being excavated, except where these railroad tracks were supported to enable the railroad company to operate its cars. There is no evidence of any depression or hole in this street of over five or six inches. The railroad company had built its tracks here under legislative authority, and this subway was being excavated by the contractors under like authority, and over neither of these corporations had the city any control. It would be most unreasonable, under these circumstances, to hold the city responsible for small depressions in the pavement between these tracks; but the evidence does not justify a finding that it was in consequence of these holes that this automobile ran into the excavation. The evidence is substantially undisputed that the plaintiff's intestate, driving this automobile, passed a north-bound car at Forty-Third street, and drove over from the south-bound to the north-bound track to get in front of the car to proceed on his way uptown, and it was in crossing from one track to the other that for some reason the automobile did not turn quickly enough to the north, and ran into the fence guarding the excavation. It is quite possible that in some way the wheels of this automobile got on this switch, and for that reason did not turn as quickly as the plaintiff's intestate expected; but, assuming that the jury could find that this switch, with the slight depression upon one side of it, had something to do with the refusal of the automobile to turn on the north track, of which there is no evidence, and which is a mere supposition, I do not think, in view of the work that was going on in this street, the city is responsible for its condition, or can be charged with negligence because it did not keep a gang of men at work repairing the street as it was interfered with from day to day by the contractors making this excavation. There was no evidence that there was any hole or depression in the street prior to the time that the contractors interfered with it, and it is perfectly clear this slight depression, if one existed, would have been entirely harmless, but for the fact that the underground railroad contractors had made this excavation immediately alongside of and under the track. It was the excavation that made the street unsafe, not this depression of a few inches alongside of the railroad tracks. These streets through which railroad tracks run cannot be kept perfectly level. The wheels of passing vehicles necessarily cause slight depressions along side of the tracks and switches, and there is nothing in such slight inequalities of the surface to make the streets unsafe. That this street was unsafe by reason of the excavation may be conceded, but for that the city of New York was not responsible. Nor do I think the evidence sufficient to justify a finding that the plaintiff's intestate was free from contributory negligence. He was apparently familiar with this locality and the conditions that existed. It was certainly not a safe place for one of these automobiles to run at a high rate of speed from one track to the other, depending upon being able to quickly turn to avoid being thrown into the excavation. The accident resulted from the effort of the plaintiff's intestate to pass the car and get in front of it to pursue his way north at a rate of speed which ren-

dered it probable that he would be thrown into the excavation, unless the machine turned just as he expected it would, and it was this method of using the machine that caused the accident. My conclusion is that there was no evidence to sustain a finding that the city of New York was guilty of negligence, or that the plaintiff was free from negligence.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.